## Widawski *v.* Lupowitz, Trustee, Appellant.

Argued October 8, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Howard R. Detweiler,* with him *Frank R. Ambler,* for appellant.

*W. Glenn George,* for appellee.

OPINION BY ARNOLD, J., March 15, 1949:

In this action of assumpsit judgment on the verdict of the jury was entered for plaintiff, and defendant appealed because of the refusal of the court below to enter judgment for him notwithstanding that verdict.

Defendant owned and operated an apartment house with a garage adjacent to it for the use of the tenants. The charge for automobile storage was $7.00 per month. Plaintiff rented an apartment and also paid the monthly fee for storing his automobile in the garage.

At the trial plaintiff proved that he placed his automobile in the garage about 4:30 P.M., leaving the ignition keys in the car, and that the next morning he demanded the automobile, which the defendant was unable, or failed, to deliver. After proof of damages he rested.

In *Carlton v. Sley System Garages*, 143 Pa. Superior Ct. 127, 130, 17 A. 2d 748, this Court said: "When the bailor furnished proofs tending to show the bailment, the return of the car in the damaged condition, [or failure to return] and the amount of his loss, the duty then devolved on the bailee to go forward with evidence showing the circumstances under which the car was damaged [or lost]. It became its duty 'to give an account of the matter' or assume responsibility for the loss. If such account does not disclose negligence on the part of the bailee, it is then necessary for plaintiff to prove negligence if he is to be allowed to recover." Citing Schell v. Miller North Broad Storage Company, Inc., 142 Pa. Superior Ct. 293, 16 A. 2d 680.

Defendant came forward with the following evidence: Access to the garage could be had from the apartment house or through the main door leading to the street, which was the entrance and exit for automobiles. Some thirty tenants of the apartment house used the garage and had keys which would open the front door. None of the bailors was allotted a specific location or definite place to park, and the ignition keys of each car were required to be left in it, so that the attendants of the garage could park each car in a space most convenient to the operation of the garage. After the attendants parked a bailed car in such position as

they chose, the ignition keys were taken by the attendant and hung on a hook, bearing the name of the bailor, in a booth adjacent to the main floor of the garage. This booth was not guarded or locked in any way, and any person who obtained access to the garage proper, either from the apartment house or through the main entrance, had access to the booth. The car of the plaintiff was duly parked by the attendant in the late afternoon and the ignition keys placed upon the proper hook in the booth. The garage was attended by two employes of the defendant working substantially in twelve-hour shifts. Each of them had other duties in connection with the apartment house, so that the garage, and the booth with the ignition keys, were left for many hours with no one in charge, and this was particularly true at night. There was no evidence that the garage had been broken into, but the plaintiff's ignition keys had been taken and the car driven from the garage in the normal way, by someone who could unlock the main entrance thereof.

On this state of the proof the court properly refused binding instructions for the defendant and his motion for judgment non obstante veredicto. The practice of the garage required each bailor to leave his ignition keys with the defendant. This was for the latter's benefit for he did not allot particular parking spaces. Defendant knew that at least thirty keys to the garage were outstanding, and that access to the ignition keys could be had from the apartment house itself. The plaintiff's car was removed by the use of the keys, and the defendant did not use reasonable care to prevent their unauthorized use. If the defendant had properly kept and protected these keys, one who entered the garage to steal a car would have had to perform a difficult mechanical operation on the ignition system, or have the car towed away. Instead, plaintiff's car was apparently driven in normal fashion from the garage. Defendant's account of the matter disclosed his own negligence, and the evidence

was sufficient to support a finding by the jury that the loss was due to defendant's want of reasonable care.

There was no evidence that plaintiff knew or agreed, in the contract of bailment, or subsequently, that the garage and ignition keys were to be left unattended or unguarded, particularly during the nighttime; and defendant did not so contend at trial or on appeal.

Judgment affirmed.